CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 1 1 2005

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | )<br>)<br>) Criminal No. 7:05cr00049<br>v. )<br>)<br>) **MEMORANDUM OPINION**<br>DEONTAE RAYSHAUN COLETRAINE, )<br>) By: **Samuel G. Wilson**<br>Defendant. ) United States District Judge<br>) |

The defendant, Deontae Rayshaun Coletraine, is charged with one count of possession of crack cocaine in violation of 21 U.S.C. § 841(a)(1) and one count of possession of a firearm in violation of 18 U.S.C. § 922(g). Coletraine has moved to suppress evidence of: (1) crack cocaine found in his pocket following a patdown search on April 12, 2005; (2) a firearm found on his person following a patdown search on May 20, 2005; and (3) inculpatory statements made to federal agents on May 20, 2005. He claims that the evidence was obtained in violation of his Fourth Amendment rights. After conducting two evidentiary hearings in this matter,[1] the court grants Coletraine's motion to suppress evidence of the crack cocaine seized on April 12. The court denies Coletraine's motion to suppress evidence of the firearm seized on May 20 and the inculpatory statements made on May 20.

I.

On April 12, 2005, Roanoke City police officer Brian Tinsley was at 504 Day Avenue in

---

[1] After the first evidentiary hearing the government filed a motion for rehearing, stating that its witness had testified incorrectly regarding the April 12 search. The court granted the motion and conducted a second hearing.

Roanoke searching for a wanted suspect, when he encountered an individual he knew to be the caretaker for one of the building's residents, Mr. Cunningham. He asked the caretaker if he could enter Mr. Cunningham's apartment to look for the suspect. According to Officer Tinsley's testimony, the caretaker went into the apartment and obtained permission from Mr. Cunningham, who was in failing health, to enter the apartment. At some point during the course of this exchange, the caretaker also informed Officer Tinsley that Mr. Cunningham had some unwanted guests, friends of his daughter, in the apartment. Officer Tinsley was aware that Mr. Cunningham's daughter had a drug problem and brought friends to the apartment without permission; he had been asked in the past to remove these visitors. Officer Tinsley entered the apartment and encountered Mr. Cunningham's daughter. He explained the purpose of his entry and asked if she knew the wanted suspect.[2] He continued down the hallway and saw Coletraine asleep in a bedroom. Officer Tinsley had encountered Coletraine before and other officers had told him that Coletrain had been involved in several offenses involving drugs and firearms. He also knew that Coletraine was a suspect in a shooting that had occurred a week earlier. Officer Tinsley then decided to exit the apartment and call for backup. After waiting for backup, he re-entered the bedroom and awoke Coletraine. According to Officer Tinsley's testimony, Coletraine, who was fully clothed, stretched and stood up. Officer Tinsley advised him that he was going to do a patdown for his own safety. Officer Tinsley testified that during the patdown he felt an object in Coletraine's left front pocket which he did not suspect was a weapon. Officer

---

[2] Officer Tinsley admits that Coletraine did not match the description of the wanted suspect.

2

Tinsley testified that he "touched it, squeezed it a little, and knew it was crack cocaine."[3] At that point, he reached into Coletraine's pocket and discovered a plastic baggie of crack cocaine. He then arrested Coletraine on charges of possession of a controlled substance.

Several weeks later, on May 20, 2005, Roanoke City police officer Vince Haddox and several others were driving past the 400 block of Day Avenue in Roanoke after executing an unrelated search warrant. The area was known to police as an "open air drug market." They observed Coletraine and another man in front of 425 Day Avenue, a property that was marked "No Trespassing." Officer Haddox was aware that both men had a history of drug dealing, and he knew that there was an ongoing investigation into a prior shooting in which both men were suspects. Officer Haddox stopped and called out Coletraine's name, at which time Coletraine "stopped, took a look at [the officers], had a look of surprise on him, and started walking backwards." The officers approached Coletraine and "asked him if he had anything on him." He replied no, and when Officer Haddox stated he was going to pat him down for weapons, Coletraine put his hands up "as if to say he didn't have anything on him." Officer Haddox patted him down and felt an object he immediately recognized as the butt of a gun. He then removed a .22 caliber revolver from Coletraine's back pocket. The officers arrested Coletraine and searched the area immediately around 425 Day Avenue, where they found a potato chip bag with a large quantity of crack cocaine.

Upon his arrest, the Roanoke police officers took Coletraine to the Roanoke City Jail, but later transferred him into federal custody because of the pending drug charges. Kenneth Garrett,

---

[3]At the court's second hearing, Officer Tinsley claimed that he patted the baggie with an open palm and immediately, based on his training and experience, recognized it as crack cocaine.

3

a Roanoke City police officer assigned to the Drug Enforcement Administration ("DEA") drug task force, interviewed Coletraine at the DEA office. After advising Coletraine of his Miranda rights, Garrett sought information from him concerning other suspected Roanoke drug dealers. Coletraine advised Garrett that he would not talk unless Garrett promised to drop the charges. Garrett told Coletraine that if Coletraine wanted to talk "now [was] his opportunity" and that "if he wanted to talk with [them] about source of supply or whatever, [they] could try to work with him." Coletraine then told Garrett that, while the drugs found in his pocket on April 12 were his, the drugs found in the potato chip bag on May 20 were not.

Coletraine seeks to suppress evidence of the drugs found on April 12 and the firearm discovered on May 20, claiming that both were the result of unlawful searches and seizures. In addition, Coletraine seeks to suppress his May 20 admission to Officer Garrett, claiming that he made the admission because Garrett promised to drop the charges against him.

## II.

The court finds that the April 12 patdown search conducted by Officer Tinsley was lawful; however, Officer Tinsley exceeded the boundaries of a lawful patdown when he manipulated the object in Coletraine's pocket, after he knew it was not a weapon, in order to identify it. Accordingly, the court will suppress evidence of the crack cocaine seized on April 12. The court also finds that the stop and subsequent patdown by Officer Haddox on May 20 was lawful and therefore denies Coletraine's motion to suppress evidence of the firearm discovered in the course of that search. In addition, the court finds that Coletraine's incriminating statements to federal agents following his May 20 arrest were not the result of an unlawful search and seizure. Nor is there evidence of a Miranda violation.

4

Under Terry v. Ohio, a law enforcement officer may stop and briefly detain an individual when the officer has a reasonable suspicion supported by articulable facts that the person is involved in criminal activity. 392 U.S. 1, 27 (1968). The term "reasonable suspicion" requires a particularized and objective basis that would lead a reasonable person to suspect another of criminal activity. Id.; see also United States v. Sokolow, 490 U.S. 1, 7 (1989)(noting that an officer "must be able to articulate something more than an 'inchoate and unparticularized suspicion or hunch.'"). In determining whether reasonable suspicion exists, the court must consider the totality of the circumstances. See United States v. Arvizu, 534 U.S. 266 (2002).

During a Terry stop, an officer may conduct a limited patdown search if he believes that the individual is armed and dangerous, based on information sufficient to cause a reasonably prudent person under the circumstances to believe that either his safety or the safety of others is in danger. See United States v. Baker, 78 F.3d 135, 137 (4th Cir. 1996). This patdown is limited to a "frisk" of the outer clothing to discover any weapons. Minnesota v. Dickerson, 508 U.S. 366, 370 (1993). The officer may intrude into the individual's pockets or under his clothing only if, during the course of the patdown, he feels an object whose contraband nature is "immediately apparent." U.S. v. Raymond, 152 F.3d 309, 312 (4th Cir. 1998). "If its shape or size does not indicate its contraband nature, the search must stop." Id.

First, the court finds that Officer Tinsley's decision to detain Coletraine on April 12 was a lawful Terry stop because Officer Tinsley had a reasonable suspicion, based on his conversation with the caretaker, that Coletraine was trespassing. In addition, Officer Tinsley's patdown search was justified because he was aware of Coletraine's criminal history and also knew that Coletraine was a suspect in a recent shooting. However, Officer Tinsley was required to stop his search as

5

soon as he knew the object in Coletraine's pocket was not a weapon, because he did not immediately identify the object as contraband, and he was otherwise lacking probable cause. Rather, he testified that he "squeezed" the object in order to identify it as crack cocaine, which went beyond the bounds of a lawful frisk. See Dickerson, 508 U.S. at 375 (finding that identification of an object by "squeezing, sliding, and otherwise manipulating the defendant's pocket" went beyond the bounds of a Terry frisk). The court accordingly will suppress evidence of the crack cocaine discovered in Coletraine's pocket.

Next, the court finds that the Roanoke City police officers were justified in stopping Coletraine on May 20 because they had a reasonable, articulable suspicion that criminal activity was afoot. The officers encountered Coletraine on a property marked "No Trespassing," in an area known as an "open air drug market," in the company of a known drug dealer. Viewing the circumstances in their totality, the Terry stop was justified. In addition, the officers reasonably believed that Coletraine was armed and dangerous. The officers knew that Coletraine and his companion were suspects in a shooting the previous week. Under these circumstances, a protective patdown was justified. Officer Haddox testified that he "felt a large heavy object" which he immediately identified, based on his training and experience, as the butt of a gun. Because the firearm was discovered during the course of a lawful Terry stop and frisk, the court denies the defendant's motion to suppress.

Finally, the court denies Coletraine's motion to suppress the May 20 confession. Because the court finds that the May 20 stop and frisk was lawful under Terry, the confession was not the fruit of an unlawful search. Nor is there any indication that federal agents violated Coletraine's Miranda rights. Accordingly the court denies Coletraine's motion to suppress evidence of his

6

Case 7:05-cr-00049-SGW   Document 29   Filed 08/11/05   Page 6 of 7   Pageid#: 61

confession.

## III.

For the reasons stated, the court grants Coletraine's motion to suppress as to evidence of the crack cocaine found in his pocket on April 12, 2005. The court denies Coletraine's motion as to evidence of the firearm found on his person on May 20, 2005, and as to his admission to federal agents on May 20, 2005.

ENTER: This 11th day of August, 2005.

UNITED STATES DISTRICT JUDGE